UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CATARINA GOMES, DIANE HURLEBAUS, LORI LIBERTI AND ROBERT WALLIS, on behalf of themselves and others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>MIDLAND FUNDING, LLC<br><br>Defendant | Case No. 1:11-cv-11053-NMG<br><br>**PLAINTIFFS' MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION AND MEMORANDUM IN SUPPORT** |

TABLE OF CONTENTS

Page

Introduction ..................................................................................................................................1

I.      Under The *Rooker-Feldman* Doctrine, This Court Lacks Jurisdiction Of Plaintiffs' Claims Insofar As They Seek A Declaration That State Court Judgments Obtained By Midland Are Void ............................................................3

II.     This Court Should Abstain From Exercising Jurisdiction Over Plaintiffs' Requests For Injunctive Relief As To Ongoing Litigation ........................................4

III.    A Remand Of Claims As To Which This Court Lacks Or Should Decline Jurisdiction Is Warranted .........................................................................................8

IV.    Midland Has Failed To Establish A Reasonable Probability That The Amount In Controversy Exceeds $5 Million ............................................................10

Conclusion ................................................................................................................................12

TABLE OF AUTHORITIES

Page

**Cases**

*Amoche v. Guarantee Trust Life Ins. Co.*,
    556 F.3d 41 (1st Cir. 2009) .................................................................................. 10

*Bergquist v. Mann Bracken*,
    592 F.3d 816 (7th Cir. 2010) ................................................................................ 9

*Colorado River Water Conservation District v. U.S.*,
    424 U.S. 800 (1976) .............................................................................................. 5

*Corcoran v. Ardra Insurance Co.*,
    842 F.2d 31 (2nd Cir. 1988) .................................................................................. 9

*Davison v. Gov't of P.R.-P.R. Firefighters Corps.*,
    471 F.3d 220 (1st Cir. 2006) ................................................................................. 4

*Echevarria-Chaparro v. Banco Popular of Puerto Rico*,
    2010 WL 1416742 (D. P.R. 2010) ........................................................................ 4

*Epps v. Creditnet, Inc.*,
    320 F.3d 756 (7th Cir. 2003) ................................................................................ 3

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
    544 U.S. 280 (2005) .............................................................................................. 3

*Forsberg v. Land Court of Commonwealth of Massachusetts*,
    2010 WL 4008571 (D. Mass. 2010) ...................................................................... 4

*H.P. Hood v. Comm'r of Agric., Food, and Rural Resources*,
    764 F. Supp. 662 (D. Me. 1991) .................................................................. 6, 7, 8

*Juidice v. Vail*,
    430 U.S. 327 (1977) .......................................................................................... 7, 8

*Louisiana Power & Light Co. v. City of Thibodaux*,
    360 U.S. 25 (1959) ................................................................................................ 5

*Mack v. Wells Fargo Bank*,
    2011 WL 1344194 (D. Mass. April 8, 2011) ...................................................... 12

*Melahn v. Pennock Ins., Inc.*,
    965 F.2d 1497 (8th Cir. 1992) ............................................................................... 9

*Middlesex County Ethics Committee v. Garden State Bar Assoc.*,
    457 U.S. 423 (1982) ..................................................................................... 5, 6, 8

*Midland Funding, LLC v. Gomes*,
    201107CV000240 (Dorchester District Court) ...................................................... 5

*Midland Funding, LLC v. Hurlebaus*,
    201007SC000333 (Dorchester Small Claims Court) ............................................. 5

*Moore v. Sims*,
    442 U.S. 415 (1979) .................................................................................................. 8

*Pennzoil Co. v. Texaco Inc.*,
    481 U.S. 1 (1987) ...................................................................................................... 7

*Quackenbush v. Allstate Insurance Co.*,
    517 U.S. 706 (1996) .................................................................................................. 9

*Reynolds v. World Courier Ground, Inc.*,
    272 F.R.D. 284 (D. Mass. 2011) ......................................................................... 10, 12

*Rossello-Gonzalez v. Calderon-Serra*,
    398 F.3d 1 (1st Cir. 2004) ......................................................................................... 10

*Silva v. Massachusetts*,
    351 Fed. Appx. 450 (1st Cir. 2009) ............................................................................. 3

*State of Minnesota v. Midland Funding, LLC*,
    CA No. 27-cv-11-11510 (Hennepin County District Court, filed May 19, 2011) ........ 1

*Younger v. Harris*,
    401 U.S. 37 (1971) ............................................................................................ 5, 6, 8

**Statutes**

28 U.S.C. § 1332(d) ............................................................................................................. 2

M.G.L. c. 93 § 24 ................................................................................................................. 2

M.G.L. c. 239, § 13H ........................................................................................................... 1

M.G.L. c. 93A ...................................................................................................................... 2

## INTRODUCTION

Midland Funding, LLC, a California corporation, is one of the nation's largest bulk debt buyers. It purchases large electronic portfolios of defaulted consumer debts worth billions of dollars, for which it pays pennies on the dollar. It purchases these debts for the purpose of collecting them. Each year, Midland files hundreds if not thousands of lawsuits against Massachusetts consumers in courts throughout the Commonwealth.[1] Midland's practices here mirror its practices in civil courts and small claims courts across the country. Midland files barebones, boilerplate complaints that seldom explain the basis for its damages calculations, or its relationship to the alleged debt. In the case of Ms. Gomes it never filed an affidavit attesting to the basis for or calculation of its claimed damages as required by M.G.L. c. 239, § 13H. It routinely obtains judgments against defendants who are almost always unrepresented, usually by default, typically entered without a hearing or a trial, often by a clerk magistrate. Midland aggressively seeks to enforce its judgments in Massachusetts through wage garnishments, property liens, and capias arrest warrants.

Despite the fact that it actively, regularly, repeatedly, and aggressively uses the Massachusetts courts to collect alleged debts from Massachusetts consumers by suing them, seizing their wages, placing liens on their homes, and/or having them arrested, Midland is not and has never been licensed as a debt collector in Massachusetts.

---

[1] In a recent complaint filed against Midland for "robo-signing" and other illegal debt collection practices, the Minnesota Attorney General estimated that "in 2009 alone, Midland and [its affiliate Midland Credit Management, Inc.] filed over 245,000 lawsuits against individual citizens nationwide…" *See State of Minnesota v. Midland Funding, LLC,* CA No. 27-cv-11-11510, Complaint (Hennepin County District Court, filed May 19, 2011).

Unlicensed debt collection is not only a violation of M.G.L. c. 93A and c. 93 § 24, *et seq.*, it is a criminal offense in Massachusetts.

The Plaintiffs, Catarina Gomes, Diane Hurlebaus, Lori Liberti and Robert Wallis filed this state law class action against Midland in the Suffolk Superior Court, alleging that Midland's unlicensed debt collection practices violate c. 93A, and Massachusetts' licensing law. The Plaintiffs' complaint seeks a declaratory judgment that the judgments obtained by Midland are void, as they constitute criminal acts under Massachusetts licensing law, injunctive relief to enjoin Midland from collecting debts in violation of the licensing law, an order requiring Midland to disgorge amounts it has illegally collected from Massachusetts consumers, and damages.

Midland has removed this purely state law consumer class action, challenging state court lawsuits based on state consumer protection law, to this court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), claiming that the amount in controversy exceeds CAFA's $5 million threshold. Midland's removal is improper for at least three reasons. First, because of the *Rooker-Feldman* doctrine this Court does not have subject matter jurisdiction over the Plaintiffs' claims that challenge the validity of Midland's state court judgments. Second, as the Plaintiffs' claims involve a challenge based purely on state law that goes to the heart of the integrity of the state court judicial system, and involves ongoing litigation, this Court should abstain from resolving these claims. Third, Midland offers no proof to meet its burden of showing that the $5 million threshold has been met. Pure conjecture is insufficient as a matter of law to establish the amount in controversy. For all of these reasons, removal was improper and the Court should remand this purely state law case to state court.

**I.    UNDER THE *ROOKER-FELDMAN* DOCTRINE, THIS COURT LACKS JURISDICTION OF PLAINTIFFS' CLAIMS INSOFAR AS THEY SEEK A DECLARATION THAT STATE COURT JUDGMENTS OBTAINED BY MIDLAND ARE VOID**

The *Rooker-Feldman* doctrine prohibits federal courts from reviewing state court judgments. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). An action in federal court that alleges an injury "inextricably intertwined" with a state court decision, such that success in the federal court would require overturning the state court decision, is barred by the *Rooker-Feldman* doctrine. *Epps v. Creditnet, Inc.,* 320 F.3d 756, 759 (7th Cir. 2003). To the extent that a party seeks to overturn a state court judgment itself or to remedy the harm caused by it, a federal court must refuse to exercise jurisdiction because the lower federal courts may not act as appellate courts for decisions of the state courts. *Exxon Mobil Corp.*, 544 U.S. at 284.

The *Rooker-Feldman* doctrine has been applied in a host of federal court actions challenging state court judgments, including debt collection and foreclosure judgments. For example, in *Silva v. Massachusetts*, 351 Fed. Appx. 450 (1st Cir. 2009), the First Circuit held that the district court lacked subject matter jurisdiction over an action brought by mortgagors challenging Massachusetts court judgments because the action complained of injuries caused by state court foreclosure judgments, which were rendered before the federal court action was commenced, and asked the court to review and reject state court judgments. In *Epps,* 320 F.3d at 759, the 7th Circuit held that the district court did not have jurisdiction over claims attacking the validity of a state court judgment for treble damages assessed in a bad check collection case. The court explained that "[a]n

3

action in federal court that alleges an injury "inextricably intertwined" with a state court decision, such that success in the federal court would require overturning the state court decision, is barred by the *Rooker-Feldman* doctrine." *Id. See also Forsberg v. Land Court of Commonwealth of Massachusetts*, 2010 WL 4008571 (D. Mass. 2010) ("to the extent that there is a final order of the state court with respect to foreclosure of the real property, this court lacks jurisdiction to review the judgment of the state court, pursuant to the *Rooker-Feldman* doctrine"); *Davison v. Gov't of P.R.-P.R. Firefighters Corps.,* 471 F.3d 220, 223 (1st Cir. 2006) ("*Rooker-Feldman* squarely applies when a plaintiff insists that we must review and reject a final state court judgment."); *Echevarria-Chaparro v. Banco Popular of Puerto Rico*, 2010 WL 1416742 (D. P.R. 2010) (district court lacked jurisdiction because to grant the relief requested "would entail action overturning the finality of the state court's judgment, a scenario that is barred by the *Rooker-Feldman* doctrine").

Here, the Plaintiffs allege in Count I of their amended complaint that final judgments entered by the state courts, prior to the commencement of this action, are void under state law, because Midland was not licensed as a debt collector when it obtained the judgments. As the cases above demonstrate, this Court lacks jurisdiction over these claims because they seek to invalidate the state court judgments. As such, the Court should remand those claims to the state court where they were originally filed.

**II.    THIS COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION OVER PLAINTIFFS' REQUESTS FOR INJUNCTIVE RELIEF AS TO ONGOING LITIGATION**

In Count II of their amended complaint Plaintiffs' request injunctive relief related to ongoing collection proceedings, specifically that pending actions be dismissed, and

4

proceedings to enforce judgments or otherwise collect debts from Massachusetts consumers be enjoined. In addition, two of the Plaintiffs themselves have ongoing actions pending in the state district court asserting defenses and counterclaims to Midland's collection actions, on behalf of themselves and a class, all based on Midland's unlicensed debt collection. *Midland Funding, LLC v. Gomes*, 201107CV000240 (pending in Dorchester District Court); *Midland Funding, LLC v. Hurlebaus*, 201007SC000333 (pending in Dorchester Small Claims Court). Although the *Rooker-Feldman* doctrine does not strictly apply to actions where a final judgment has not yet been entered, the Court should abstain from exercising jurisdiction over such actions and should remand all of Plaintiffs' injunctive relief claims[2] to the state court where these actions are pending.

The United States Supreme Court has developed a number of interrelated doctrines counseling federal courts to abstain from exercising their jurisdiction in certain circumstances, based on well-established principles of equity, federalism and comity. *See, e.g., Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959); *Younger v. Harris*, 401 U.S. 37 (1971); *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800 (1976). The abstention doctrine applies both to cases removed to federal court on the basis of diversity jurisdiction as well as to actions originally filed in federal court. *City of Thibodaux*, 360 U.S. 25.

Here, the most applicable line of cases starts with *Younger*, a case which

---

[2] The considerations that require abstention as to Plaintiffs' injunctive relief claims apply equally to ongoing state court proceedings and to those in which there has already been a judgment, in contrast to the *Rooker-Feldman* doctrine, which only applies to the latter. Abstention is appropriate as to these claims because this Court cannot grant such relief without interfering with "[p]roceedings necessary for the vindication of important state policies or for the functioning of the state judicial system." *Middlesex County Ethics Committee v. Garden State Bar Assoc.*, 457 U.S. 423, 432 (1982).

originally focused on preventing interference with state criminal proceedings, but now stands for the proposition that federal courts should abstain from exercising jurisdiction where there are pending state judicial proceedings and an important state interest is implicated. *Middlesex County Ethics Committee v. Garden State Bar Assoc.*, 457 U.S. 423, 432 (1982) ("The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved.") *See also H.P. Hood v. Comm'r of Agric., Food, and Rural Resources*, 764 F. Supp. 662, 668 (D. Me. 1991) (accord).

The Supreme Court in *Middlesex* established three factors for courts to consider when deciding whether abstention is warranted. The court must evaluate whether the ongoing state proceeding is a judicial process, whether it implicates important state interests and whether there is an adequate opportunity in the state proceeding to raise constitutional challenges. *Middlesex*, 457 U.S. at 432. *See also H.P. Hood*, 764 F. Supp. at 668. This case satisfies all three conditions. First, there is no dispute that the debt collection proceedings sought to be enjoined by Plaintiffs are judicial proceedings. All of these are cases filed in Massachusetts state courts by Midland, against Massachusetts consumers, seeking civil judgments.

With regard to the presence of important state interests, the Supreme Court in *Middlesex* held that states have substantial interests – and federal courts "should abstain" – in "[p]roceedings necessary for the vindication of important state policies or for the functioning of the state judicial system." 457 U.S. at 432. This case – which Plaintiffs originally filed in state court, where it belongs – presents issues of supreme importance to the Massachusetts judicial system and to state policy, including possible abuse of the

state judicial system by the unlawful filing of collection suits by an unlicensed debt collector, the validity and enforceability of hundreds or possibly thousands of state court judgments obtained by an unlicensed collector against Massachusetts consumers, and Massachusetts courts' ability to protect the welfare of its residents and the integrity of its judicial system.

Massachusetts' interest in the integrity of its judicial system and the enforceability of judgments is exactly the interest recognized by the Supreme Court in abstention cases such as *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987) and *Juidice v. Vail*, 430 U.S. 327, 335 (1977). In *Juidice* the court found that the state's interest in the contempt process, which allows a court to impose fines and jail time for defendants in collection actions who fail to appear for depositions after a judgment, is an important state interest because it allows the court to "vindicate[] the regular operation of its judicial system." Likewise, *Pennzoil* involved a "challenge to the process by which the state compels compliance with the judgments of its courts. *Pennzoil Co.*, 481 U.S. at 14-15.

Similarly, the actions challenged here, the unlicensed collection of debts by filing actions in state courts, and the enforcement of judgments obtained illegally, directly implicate the integrity of the state judicial system as well as the validity of judgments entered by Massachusetts district courts.

The requirements of Massachusetts collection and licensing laws are similarly of particular local interest. *See H.P. Hood*, 764 F. Supp. at 669 (recognizing state's interest in regulating industry such as milk production is an important state interest). Importantly, the interest to be weighed in determining whether the state interest is important enough to warrant abstention is not the state's "immediate interest in the outcome of the specific

7

suit in question," but its "overall interest in enforcing or reviewing actions affecting the interests governed by the applicable state statute or regulation." *Id.* Since these two factors – a state judicial proceeding and a strong state interest – are satisfied, the Court "should abstain unless" certain narrow exceptions apply. *Middlesex,* 457 U.S. at 432 (internal quotation omitted).

The third prong of the Middlesex inquiry is inapplicable here as there are no constitutional claims raised, and no allegations of any bad faith in the state court action. *Id*. at 435. See also *Juidice*, 430 U.S. at 338; *H.P. Hood*, 764 F. Supp. at 671.

*Younger* abstention analysis typically arises in the context of a case filed in federal court by a plaintiff asserting federal constitutional claims or that other rights were allegedly violated in a state court proceeding. Here, it is the Defendant who is trying to take advantage of our parallel court systems to avoid the authority of the state courts, not on the basis of an asserted constitutional right or allegations of abusive litigation, but merely based on diversity and CAFA jurisdiction. Defendant's preference for a federal forum does not constitute the kind of "extraordinary circumstances" that weigh against abstention. While *Middlesex* does not discuss in detail what those circumstances might be, other Supreme Court cases have. The bar is high indeed:

> "[W]hatever else is required, such circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation."

*Moore v. Sims*, 442 U.S. 415, 433 (1979) (*quoting Kugler v. Helfant*, 421 U.S. 117, 125 (1975)). Defendant cannot demonstrate such circumstances here.

### III. A REMAND OF CLAIMS AS TO WHICH THIS COURT LACKS OR SHOULD DECLINE JURISDICTION IS WARRANTED

Since *Younger* abstention clearly applies to Plaintiffs' claims for equitable relief

8

as to ongoing litigation, the appropriate course is for this Court to remand these claims to the state court as well. District courts have the authority to remand, based on abstention, claims for injunctive or declaratory relief. *See Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 718 (1996) (holding that the power to abstain is located in "the historic discretion exercised by federal courts 'sitting in equity'"); *id.* at 720 (distinguishing between abstention-based remand orders or dismissals and an abstention-based decision to stay adjudication while retaining jurisdiction based on the nature of the relief requested). *See also Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497, 1501-1502 (8th Cir. 1992) ("We conclude that the district court had the authority to remand this case to state court based on abstention, a reason not expressly articulated in [28 U.S.C.] § 1447(c)"); *Corcoran v. Ardra Insurance Co.*, 842 F.2d 31, 36-37 (2nd Cir. 1988) ("we conclude that if a district court has the power to dismiss an action on grounds of abstention it has the power to remand to the state court on those grounds").

In a case like this one, which was removed by the defendant under CAFA, the Seventh Circuit Court of Appeals recently held:

> If some parts of a single suit are within federal jurisdiction, while others are not, then the federal court must resolve the elements within federal jurisdiction and remand the rest-unless the balance can be handled under the supplemental jurisdiction… Because of the *Rooker-Feldman* doctrine, the balance of this suit cannot be resolved in federal court, but the need to remand some of it does not entail a power to remand all. (citations omitted).

*Bergquist v. Mann Bracken*, 592 F.3d 816, 819 (7th Cir. 2010). Here too, this Court should decline jurisdiction of certain claims – those for injunctive and declaratory relief – and remand them as they are within the jurisdiction of the state court in which they were originally brought.

9

## IV. MIDLAND HAS FAILED TO ESTABLISH A REASONABLE PROBABILITY THAT THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION

The Plaintiffs did not plead a specific amount of damages in their Amended Class Action Complaint. Midland therefore bears the burden to prove that the amount in controversy exceeds $5 million. *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 50 (1st Cir. 2009) (defendant, "as the proponent of federal jurisdiction" must demonstrate that the amount in controversy exceeds $5 million). As here, "where the complaint does not contain specific damage allegations, the removing defendant must show a *reasonable probability* that the amount in controversy exceeds" the jurisdictional minimum. *Amoche*, 556 F.3d at 50; *see also Reynolds v. World Courier Ground, Inc.*, 272 F.R.D. 284, 286 (D. Mass. 2011) ("if the jurisdictional amount is not facially apparent from the complaint, then a court 'need look to the notice of removal and any other materials submitted by the removing defendant'").

Courts in this district have established "instructive principles" for determining whether the removing defendant has met its burden. First, if damages cannot be determined from the face of the complaint, a removing defendant must submit specific and affirmative evidence of the amount in controversy. *Reynolds,* 272 F.R.D. at 287. Second*,* in analyzing whether the defendant has met the "reasonable probability" standard, the court may "consider which party has better access to the relevant information." *Id.* at 286, *citing Amoche*, 556 F.3d at 50*.* In addition, "any doubts in the evidence should be construed in favor of remand because the court has a 'responsibility to police the border of federal jurisdiction.'" *Reynolds,* 272 F.R.D. at 286 (further citations omitted); *Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 11 (1st Cir. 2004) (the "removal statute

should be strictly construed against removal"). This preliminary determination whether defendant has met its burden should be done quickly, without an extensive fact-finding inquiry." *Reynolds, citing Amoche*, 556 F.3d at 50.

When these principles are applied to Midland's removal filing it is apparent that Midland has not met its burden. Neither the Notice of Removal, nor the supporting declaration contains any specific or affirmative evidence that the amount at stake in this case exceeds $5 million. The Notice cites only the declaration of Midland's parent company's director of "legal outsourcing" on this point. Notice of Removal, § 17 [Dkt. No. 1]. But that declaration attests only that Midland has filed "hundreds" of lawsuits "against over one hundred separate individuals in the four years preceding" the class action complaint filing. Declaration of Xenia Murphy, §§ 3, 4 [Dkt. No. 1-2]. Ms. Murphy further asserts that the possible disgorgement of any amounts collected in those lawsuits, along with statutory damages and the voiding of any judgments, "exceeds $5 million." *Id.* Absent from the declaration is any specific or affirmative evidence as to how the amount in controversy was calculated.

The absence of any evidence is especially significant because the defendant is in the best position to have access to the relevant information. *See Amoche,* 556 F.3d at 52 ("In assessing whether [a defendant] has carried its burden of showing a reasonable probability that the amount in controversy exceeds $5 million, we may consider what information reasonably within [that defendant's] control it failed to present."); *Reynolds*, 272 F.R.D. at 287 ("the information necessary to determine the amount in controversy should be readily available to Defendant"). Midland obviously has access to the amounts of the judgments it has obtained against those hundred consumers referred to in Ms.

Murphy's affidavit, as well as the amounts collected from Massachusetts consumers. Yet Midland has declined to provide this evidence, offering nothing beyond the general number of collection suits it has brought in the last four years. "This is not enough to carry defendants' burden of showing a reasonable probability that the amount in controversy is $5 million or more." *Mack v. Wells Fargo Bank*, 2011 WL 1344194, at *8 (D. Mass. April 8, 2011). And as Judge O'Toole noted in *Reynolds,* the "fact that Defendant declined to offer any such evidence suggests this evidence may not support jurisdiction." *Reynolds*, 272 F.R.D. at 284.

Finally, if this Court remands the claims over which it has no jurisdiction as well the claims over which it should abstain, as discussed *supra,* it is highly unlikely that the remaining claims will satisfy the $5 million threshold requirement.

Applying these principles, and resolving any doubts as to the evidence in favor of remand, as the Court must, *Reynolds*, 272 F.R.D. at 284, leads to only one conclusion, that this case should be remanded to the state court.

## CONCLUSION

The Plaintiffs' complaint includes claims which must be remanded to the state court because this Court does not have the jurisdiction to adjudicate them, as well as claims as to which the court should abstain and remand because there is ongoing litigation involving important state interests. In addition, Midland has not met its burden of establishing to a reasonable probability that the amount at stake exceeds $5 million. For these reasons, this Court should remand the entire case to state court so that Massachusetts consumers can seek relief for their state law claims in state court.

Date:  July 13, 2011

Respectfully submitted,

*/s/ Elizabeth Ryan*
Elizabeth Ryan, BBO #549632
John Roddy, BBO #424240
Roddy Klein & Ryan
727 Atlantic Avenue, 2d Floor
Boston, MA 02111
Telephone: (617) 357-5500, ext. 17
Fax: (617) 357-5030
ryan@roddykleinryan.com

Josef Culik (BBO # 672665)
Culik Law P.C.
100 Cummings Center, Suite 425G
Beverly, MA 01915
Telephone 978-910-0248
josef@culiklaw.com

**LOCAL RULE 7.1 CERTIFICATE**

I, Elizabeth Ryan, hereby certify pursuant to Local Rule 7.1(a)(2) that Plaintiffs' counsel conferred with counsel for Defendant by telephone before filing the foregoing motion in an attempt in good faith to resolve or narrow the issue.

*/s/ Elizabeth Ryan*
Elizabeth Ryan

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) and paper copies will be sent to those indicated as non-registered participants on July 13, 2011.

*/s/ Elizabeth Ryan*
Elizabeth Ryan

13